UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DANNY BANKS,**<br>Plaintiff,<br>vs.<br>**FORD MOTOR COMPANY,**<br>Defendant. | **2:25-CV-13556-TGB-CI**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF NO. 17)** |

In this employment discrimination case, Plaintiff Danny Banks, proceeding pro se, alleges that his current employer, Defendant Ford Motor Company ("Ford"), has discriminated and retaliated against him and subjected him to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). Now before the Court is Ford's Partial Motion to Dismiss Banks's Second Amended Complaint. ECF No. 17. The motion has been fully briefed. ECF Nos. 18, 20. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, Ford's motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

According to the Second Amended Complaint ("SAC"), Banks began working at Ford's Flat Rock Assembly Plant in March 2016, SAC ¶¶ 8–9, ECF No. 15, and he continues to be employed by Ford. Banks alleges that shortly after he started working at Ford, his coworkers discovered photographs and videos of him auditioning for American Idol, and that based on the photos and video, his coworkers assumed, falsely, that he was gay. *Id.* ¶¶ 10–11. Banks asserts that his coworkers then began sexually harassing him "almost daily" based on his "perceived sexual orientation." *Id.* ¶¶ 11-12. Banks contends that "[f]rom 2016 through 2025," he was subjected to "repeated harassment including homophobic slurs such as 'faggot,' 'gaybob,' and 'Marvin Gaye,' [as well as] sexualized commentary, humiliating conduct, mocking references to [him] as 'the gay singer,'" and notes placed on his back without his knowledge stating "faggot," "gaybob," and "fag." *Id.* ¶¶ 14–15. Banks further alleges that his coworkers threw tissue into restroom stalls while he was inside using the restroom, spit on toilet seats, and sang sexualized songs referencing homosexual acts. *Id.* ¶ 16.

Banks contends that in March 2023, a coworker who had previously intervened to stop the harassment of Banks died, and the conduct toward Banks intensified as coworkers "mocked" Banks by stating that his "American Idols boyfriend died." *Id.* ¶¶ 17, 19. He alleges that "[f]rom spring 2023 through late 2024" and continuing into 2025, his coworkers

"almost daily revived earlier homophobic references, sexual slurs, and humiliating conduct" toward him as well as placing "sexualized graffiti" in the restrooms "depicting drawings of penises." *Id.* ¶¶ 20–21.

Banks alleges that during the spring and summer of 2023, he verbally reported sexual harassment and discrimination based on perceived sexual orientation to Ford's Human Resources ("HR") department. In addition, Banks sought medical treatment from workplace medical staff due to anxiety caused by the sexual harassment and retaliation after he reported to HR, and also "frequently left work to seek treatment from his personal physician" because of the "ongoing sexual harassment and retaliation." *Id.* ¶¶ 23–25.

Banks alleges that he again reported "sexual harassment, sabotage, and retaliation" to his supervisors and to HR in July, August, and September 2024, and that "[s]hortly thereafter" he was required to undergo a fitness-for-duty psychiatric evaluation based on written statements by the workplace medical staff. *Id.* ¶¶ 26–27. Banks was diagnosed with "Adjustment Disorder with Anxiety" and cleared to work in September 2024. *Id.* ¶ 28.

In October 2024, following the fitness-for-duty evaluation, Banks contends that his coworkers spread rumors that he was mentally unstable and would become violent, including that he would "shoot" or "bomb" the workplace, and mockingly referred to him as "Mr. Kaboom." *Id.* ¶¶ 29–30. The SAC states that Banks was then suspended "unjustly,"

and when he contacted HR, they declined to intervene. *Id.* ¶ 31. Banks filed an EEOC charge of discrimination, but he was thereafter subjected to "unjust discipline" and a "sexual harassment investigation" in October and November 2024. *Id.* ¶¶ 32–33. The investigation was dismissed in December 2024. *Id.*

Beginning in 2025 and throughout that year, Banks alleges that he was subjected to escalating retaliation including "ignored restroom blue-light requests, repeated disciplinary targeting by multiple supervisors, sabotage of [his] work, and sexualized graffiti in [the] restroom." *Id.* ¶ 34. Banks reported this conduct as retaliation and a hostile work environment, both verbally and in writing, and he also wrote to HR in November/December 2025 complaining about the sexual graffiti in the restroom. *Id.*

In addition, Banks submitted written complaints to HR in November 2025 about the denial of a medical pass while in pain, issuance of a write-up for "impeding production," sabotage of his work, continued retaliation, and "conflicts of interest involving a Workers' Compensation employee." *Id.*¶ 35. Ford failed to investigate or otherwise address these complaints of a hostile work environment and retaliation. *Id.* ¶ 36.

Banks received his right-to-sue letter from the EEOC in "late August 2025," *id.* ¶ 37, and, proceeding pro se, he brought this lawsuit against Ford on November 7, 2025. ECF No. 1. Banks filed an Amended Complaint as of right on November 26, 2025. ECF No. 6.

On December 23, 2025, Ford filed a motion to dismiss the Amended Complaint. ECF No. 10. On December 31, the Court issued an Order permitting Banks to amend his FAC pursuant to Fed. R. Civ. P. 15(a)(2), but "without expressing any view regarding the merits of [Ford's] Motion to Dismiss." ECF No. 11.

Banks filed the SAC on January 5, 2026. ECF No. 15. He asserts claims for: (1) a hostile work environment under Title VII (Count I), (2) discrimination and a hostile work environment under the ADA (Count II), (3) retaliation under Title VII and the ADA (Count III), and (4) discrimination, harassment, and retaliation under the ELCRA (Count IV). *Id.*

On January 20, 2026, Ford moved to partially dismiss the SAC. ECF No. 17. Ford moves to dismiss the SAC's disability-based hostile work environment claim in Count II and the retaliation claims in Counts II, III, and IV. *Id.* Banks has filed a response in opposition to Ford's motion, ECF No. 18, and Ford has filed a reply brief in support of its motion. ECF No. 20.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, "a short and plain statement of the claim" sufficient to "give the defendant fair notice of what the ... claim is and the grounds on which it rests" is enough, and a complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Id*. "The Court will therefore 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 375 (6th Cir. 2026) (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011)).

The court holds pro se pleadings to "less stringent standards than formal pleadings drafted by lawyers" and construes them liberally. *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). But "basic pleading essentials" still apply, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), and the court has no duty to "create a claim which [the pro se plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (per curiam) (quoting *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)).

## III. DISCUSSION

### A. Disability-Based Hostile Work Environment Claim (Count II)

Ford first argues that Banks's disability-based hostile work environment claim under the ADA fails because he has not alleged any conduct "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." ECF No. 17, PageID.91 (quoting *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002)). Ford contends that, at most, Banks alleges that his coworkers "spread rumors that [Banks] was mentally unstable and would become violent" in the workplace and referred to him as "Mr. Kaboom," and that this is insufficient as a matter of law to state a hostile work environment claim. *Id.* PageID.92.

Banks failed to specifically address this argument in his Response brief. *See* ECF No. 18. Ford argues in its reply brief that Banks's failure to respond should be treated as a concession of this argument. ECF No. 20, PageID.116–17. While "[s]ome cases suggest that an unopposed motion to dismiss can be granted because the plaintiff has abandoned any potential arguments," *Bell v. Dollar Tree, Inc.*, No. 24-13259, 2025 WL 3252656, at *2–3 (E.D. Mich. Nov. 21, 2025) (Michelson, J.) (collecting cases), "the Sixth Circuit has also suggested that a district court cannot grant a motion to dismiss for failure to state a claim on the sole ground that a plaintiff has failed to respond[.]" *Id.* (citing *Carver v.*

*Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). "[C]ourts in this district routinely review the merits of unopposed motions to dismiss to determine whether the moving defendant has satisfied its burden under Fed. R. Civ. P. 12(b)(6)." *Matsey v. City of Troy*, No. 24-10571, 2025 WL 4663141, at *2 (E.D. Mich. Sept. 29, 2025) (Kumar, J.) (collecting cases addressing the merits of unopposed motions to dismiss). This Court will do the same.

A "disability-based hostile work environment claim" under the ADA requires a plaintiff to ultimately establish that:

> (1) he is disabled; (2) he "was subjected to harassment, either through words or actions, based on" his disability; (3) the harassment "create[ed] an objectively intimidating, hostile, or offensive work environment" that "produce[d] 'some harm respecting an identifiable term or condition of employment'"; and (4) "there is some basis of liability on the part of the employer."

*Kellar v. Yunion, Inc.*, 157 F.4th 855, 873 (6th Cir. 2025) (quoting *McNeal v. City of Blue Ash*, 117 F.4th 887, 898, 904, 906 (6th Cir. 2024)). Those are the "elements of proof that comprise a plaintiff's prima facie case under the *McDonnell Douglas* burden-shifting framework, which applies at the summary judgment stage," after the parties have had an opportunity to conduct discovery. *See Bruce*, 168 F.4th at 376; *see McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Courts, however, do not apply the *McDonnell Douglas* burden-shifting standard when considering allegations of harassment at the pleading stage. *Bruce*, 168 F.4th at 376 (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir.

2012) ("[T]he prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleadings requirement.")).

Instead, the question here is "simply whether [the SAC] alleges sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [Banks] was subjected to a hostile work environment" based on his alleged disability. *See Bruce*, 168 F.4th at 376–77 (citation modified). "A hostile work environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 377 (citation modified) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "The conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person [an objective standard] and the actual victim [a subjective standard]." *Id.* (citation modified). This is a "high bar" for a plaintiff to overcome. *Kellar*, 157 F.4th at 873; *see also Khalaf v. Ford Motor Co.*, 973 F.3d 469, 485 (6th Cir. 2020) (noting that the standard for establishing a hostile work environment "sets a high bar for plaintiffs in order to distinguish meaningful instances of discrimination from instances of simple disrespect").

Sixth Circuit caselaw "is clear that 'severe *or* pervasive' is properly considered in the disjunctive" and that "[a] plaintiff need not, therefore,

necessarily demonstrate the existence of severe conduct if [he] demonstrates that the [ ] conduct at issue is sufficiently pervasive," considering its "frequency," "whether it is … humiliating," and "whether it unreasonably interferes with an employee's performance." *Bruce*, 168 F.4th at 377 (citations modified and end citations omitted); *see also Davis v. Berkley Urgent Care, P.L.L.C.*, No. 25-cv-11100, 2026 WL 852016, at *7–8 & n.10 (E.D. Mich. Mar. 27, 2026) (Levy, J.) ("A hostile work environment exists when a 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (citing *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016)).

"Allegations of 'simple teasing, ... offhand comments, and isolated incidents (unless extremely serious)' do not suffice" to state a claim sufficient to survive a motion to dismiss under Rule 12(b)(6). *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 841 (6th Cir. 2024) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)), *abrogated on other grounds by Kellar v. Yunion*, 157 F.4th 855 (6th Cir. 2025); *see also Bruce*, 168 F.4th at 379 (observing that " 'occasional ... offensive utterances' that are not 'physically threatening or humiliating' do not render a work environment hostile and discriminatory") (quoting *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)); *Perry v. Sephora USA, Inc.*, 798 F. Supp. 3d 824, 835 (M.D. Tenn. 2025) (dismissing a

plaintiff's ADA hostile-work-environment claim because "stray comments [alleged in the complaint]—while offensive—were not, standing alone, sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment").

Accepting as true the allegations in the SAC in this case, and under the authority cited above, the Court concludes that Banks fails to state a plausible disability-based hostile work environment claim under the ADA. He alleges that in October 2024, "coworkers spread rumors that [he] was mentally unstable and would become violent" and "shoot" or "bomb" the Ford plant, and that coworkers referred to him as "Mr. Kaboom." SAC ¶¶ 29–30. These allegations amount to at most limited instances of "simple teasing … offhand comments, and isolated incidents" that fall short of the severe or pervasive harassment required to state an actionable hostile-work-environment claim. *See Davis*, 2026 WL 852016, at *8 (plaintiff's allegations that co-worker told plaintiff "you and whatever spectrum you're on needs to go away," coupled with coworkers' teasing about plaintiff's math and spelling abilities "fall short of the severe or pervasive harassment required to state a hostile-work-environment claim"); *Perry*, 798 F. Supp. 3d at 835 (holding that a plaintiff who was diagnosed with anxiety and obsessive-compulsive disorder failed to state a hostile-work-environment claim because "stray comments [that were generally critical of the plaintiff's mental health issues]—while offensive—were not, standing alone, sufficiently severe or

pervasive to alter ... the conditions of [the plaintiff's] employment"). The disability-related comments and teasing alleged by Banks were not "sufficiently severe or pervasive to alter the conditions of [his] employment." *Smith*, 813 F.3d at 309.

Accordingly, Banks's disability-based hostile work environment claim under the ADA in Count II of his SAC will be **DISMISSED**. His ADA discrimination claim based on an actual or perceived mental disability, however, is unchallenged and will remain.

### B. Retaliation Claims Under Title VII, the ADA, and the ELCRA

Ford argues that Banks fails to state a retaliation claim under Title VII, the ADA, or the ELCRA. ECF No. 17, PageID.93–99.[1] According to Ford, Banks makes only two "retaliation-related" allegations: (1) that he "reported" sexual harassment, "sabotage," and "retaliation" to his supervisor and HR in September 2024, and "[s]hortly thereafter," Ford required him to undergo a fitness-for-duty psychiatric examination; and (2) he filed an EEOC charge in October 2024, and he was later "subjected to unjust discipline" and a sexual harassment investigation that was later dismissed. *Id.* PageID.93 (citing SAC ¶¶ 26–27, 32–33, ECF No. 15).

---

1 The Court analyzes all of Banks's retaliation claims using the same framework. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) ("Retaliation claims are treated the same whether brought under the ADA or Title VII."); *Reeder v. Cnty. of Wayne*, 177 F. Supp. 3d 1059, 1081 (E.D. Mich. 2016) (Drain, J.) (analyzing ADA, Title VII, and ELCRA retaliation claims under the same framework).

Ford argues that Banks's retaliation claims fail because he (1) fails to allege he was subjected to any "materially adverse action[s]," (2) fails to allege that the Ford employees who required him to undergo a psychiatric exam or the employees who disciplined him had any knowledge of his internal complaints, and (3) fails to "plausibly plead" that Ford required him to undergo a psychiatric examination in retaliation for reporting sexual harassment. *Id.* PageID.95–99.

A retaliation claim under Title VII, the ADA, or the ELCRA consists of four elements: (1) plaintiff engaged in a protected activity under the applicable statute; (2) his employer was aware of that activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the adverse action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). Although a plaintiff must *eventually* prove all of these elements, they do not have the initial burden of establishing a prima facie retaliation claim to survive a motion to dismiss. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002). Instead, a plaintiff "need allege only (a) the statutory basis for [the] claims, and (b) the factual predicate of those claims, such that the defendants are 'apprise[d] … of the [] claims and the grounds upon which they rest.'" *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 871 (S.D. Ohio 2013) (quoting *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007)). At the same time, the complaint "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common

sense,' could 'draw the reasonable inference'" that the plaintiff was subject to discrimination or retaliation. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678). But "detailed factual allegations" are not necessary. *Id.* (quoting *Iqbal*, 556 U.S. at 678–79); *see also Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *8 (6th Cir. Jan. 26, 2022) ("It is true that a complaint does not need to establish a prima facie case of retaliation or contain 'detailed factual allegations' in order to survive a motion to dismiss.") (per curiam) (internal citations omitted).

While Ford acknowledges in a footnote to some degree that "pleading the prima facie elements of a retaliation claim is not *necessarily* required," it nevertheless contends that in the absence of "smoking gun" allegations of direct evidence of retaliation, Banks "must allege circumstantial facts supporting the plausible inference that he suffered an adverse employment action because of his protected activity, *such as through pleading the prima facie elements of a retaliation claim*." ECF No. 17, PageID.94 fn. 8 (emphases added). But that is not a correct statement of the law. Banks is not required to plead a prima facie case at the motion to dismiss stage. *See Kinney*, 2022 WL 223633, at *8 ("[A] complaint does not need to establish a prima facie case of retaliation or contain 'detailed factual allegations' in order to survive a motion to dismiss.") (quoting *Keys*, 684 F.3d at 609–10).

In the retaliation context, the plaintiff must show that he faced an adverse action that is "harmful to the point that [it] could well dissuade

a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This standard is "'less onerous in the retaliation context than in the anti-discrimination context'" because it does not require that the action affect the terms, conditions, or status of employment. *See Beny v. Univ. of Michigan Bd. of Regents*, 740 F. Supp. 3d 621, 644 (E.D. Mich. 2024) (Lawson, J.), *aff'd sub nom. Beny v. Univ. of Michigan*, No. 24-1674, 2025 WL 2124175 (6th Cir. July 29, 2025), *cert. denied*, 146 S.Ct. 829 (Nov. 24, 2025) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)); *see also Burlington N.*, 548 U.S. at 70 ("Our holding today makes clear that the jury was not required to find that the challenged actions were related to the terms or conditions of employment."). "[T]he alleged discriminatory acts need not be actually illegal in order for the opposition clause to apply[,]" *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000), and "an employee who opposes a hostile work environment need not prove that the environment he complained of was actually hostile in order for the employee to receive protection from retaliation under Title VII." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015).

Ford first argues that Banks "has not adequately alleged that he was subjected to any 'materially adverse action[s]' because of any alleged protected activity. ECF No. 17, PageID.95. Ford defines a "materially adverse action" as one that "produces an injury or harm." *Id.* Ford argues

that being subjected to a fitness-for-duty examination and "unjust discipline" does not adequately allege any injury or harm because Banks was "cleared for work" and continues to be employed by Ford. *Id.* PageID.95–96.

Banks responds that he has plausibly alleged materially adverse actions to support his retaliation claims, and that Ford improperly "fragments" his allegations into "isolated events." ECF No. 18, PageID.104–05. He argues that he was required to undergo a fitness-for-duty examination "[s]hortly" after reporting sexual harassment and that Ford thereafter "permit[ed] [him] to be portrayed as unstable and dangerous in the workplace," and that even though he was later "cleared to work," the Court must still "consider the context, timing, and purpose of the examination—not merely its outcome." *Id.* Banks further argues that he has alleged that he was subjected to unjust discipline and a sexual-harassment investigation after engaging in protected activity sufficient to comply with Rule 8 and that Ford's "demand for heightened factual specificity" is improper at the motion to dismiss stage. *Id.*

Ford takes a too limited reading of Banks's allegations in the SAC. In his SAC, Banks alleges that "[s]hortly" after reporting "sexual harassment, sabotage, and retaliation to supervisors and Human Resources" in July, August, and September 2024, Ford required him "to undergo a fitness-for-duty psychiatric evaluation based on false exaggerated statements written by medical staff member[s]," and after

which he was subjected to mockery, name-calling, and rumors based on a perceived mental disability. SAC ¶¶ 26–30. Banks further alleges that he was "suspended unjustly" and when he contacted Human Resources "seeking intervention," they "declined to intervene." *Id.* ¶ 31. Banks then filed a charge of discrimination with the EEOC in October 2024 after which he alleges that he was again "subjected to unjust discipline" and "a sexual harassment investigation" which was "later dismissed." *Id.* ¶¶ 32–33. He goes on to allege that the "retaliation escalated" in 2025, "including ignored restroom blue-light requests, repeated disciplinary targeting by multiple supervisors, sabotage of [his] work, and sexualized graffiti in [the] restroom." *Id.* ¶ 34. In addition, Banks submitted additional "written complaints to Human Resources" in November 2025 about the denial of a medical pass while in pain, issuance of a write-up for "impeding production," sabotage of his work, continued retaliation, and conflicts of interest involving a workers' compensation employee, but Ford failed to investigate the complaints. *Id.* ¶¶ 35–36. Banks alleges that he was subjected to these alleged adverse actions close in time to his complaints.

Construing the allegations of Banks's pro se SAC liberally, the Court finds that these allegations, considered as a whole and taken as true, are sufficiently severe that they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (citation modified); *see also id.* at 72–73

(finding a 37-day suspension without pay was materially adverse, even though plaintiff was eventually reinstated with backpay); *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *5 (6th Cir. Aug. 2, 2022) (reversing Rule 12(b)(6) dismissal of a retaliation claim where the plaintiff alleged that he was retaliated against in various ways after reporting that a coworker made him watch a pornographic video, including making him report to a different duty station further away from his home, causing him to sleep on a reclining chair in the crew room between shifts instead of a hotel room, and scheduling him to fly when no aircraft or co-pilot was available, among other things). Whether these alleged actions are borne out through discovery, and thus whether Banks can satisfy this element of his retaliation claims on summary judgment will be determined. But Banks is held to a lower factual standard at this stage of the case. "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys*, 684 F.3d at 610.

Ford also argues that Banks fails to plead that the Ford employees who required him to undergo a psychiatric exam or who disciplined him had any knowledge of his internal complaints or EEOC charge. ECF No. 17, PageID.97–98. In support of its argument in its motion, Ford cites to cases decided on summary judgment. *See id.* (citing *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275 (6th Cir. 2012); *Johnson v. Ashton Carter, Inc.*, No. 11-10025, 2024 WL 1317777 (E.D. Mich. Mar. 27, 2024) (Behm, J.)).

These summary judgment cases have limited applicability as they follow the evidentiary standards set for in *McDonnell Douglas* and also most likely benefited from discovery.

Banks responds that he alleges that he repeatedly engaged in protected activity throughout 2023 and 2024, including making verbal complaints to supervisors and HR, disclosures to on-site medial staff, and the filing of a formal EEOC charge. ECF No. 18, PageID.103–04. Banks argues that his allegations of repeatedly reporting harassment are sufficient to plausibly allege employer knowledge. *Id.*

The Court finds that Banks sufficiently alleges in his SAC the nature of the complaints, the recipients, which included his supervisors and HR, and the relevant narrow time frame. A plaintiff is protected against retaliation for "complaints to management and less formal protests of discriminatory employment actions." *Bar*, 2022 WL 3042844, at *5 (quoting *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015)). Banks is not required to set forth "detailed factual allegations" at this stage of the case, but the allegations must set forth a reasonably plausible claim. *Iqbal*, 556 U.S. at 678. Viewing these allegations in the light most favorable to Banks, and accepting all allegations as true, *Keys*, 684 F.3d at 608, these allegations are sufficient to allow the Court to infer that the relevant decision makers over Banks's employment, his supervisors and HR personnel, were aware of his complaints. *See Northover v. Rocket Mortg., LLC*, No. 24-11265, 2025 WL

4592296, at *6 (E.D. Mich. Jan. 10, 2025) (Kumar, J.) (stating that although plaintiff "does not allege the identity of any of the decisionmakers for the alleged adverse actions taken against her, the Court, informed by its 'judicial experience and common sense,' can certainly draw the inference that the decisions to issue [the adverse actions] would have been made by at least one of" the plaintiff's supervisors or the HR personnel to whom the plaintiff had complained).

Thought Ford cites to *Griffin v. Delta Technical College*, No. 2:17-cv-2055, 2017 WL 5889809 (W.D. Tenn. Nov. 29, 2017), in its reply brief, that case is distinguishable. In *Griffin*, the plaintiff only contended that he sent a single email to Defendant's CEO the night before his termination, complaining of racist behavior by Defendant's employees. *Id.* at *5. However, he did not allege any further facts establishing that the decisionmakers who terminated him the next day knew of this singular protected activity the night before. *Id.* Conversely, in this case, Banks alleges that he repeatedly made multiple complaints, over a number of years, to his supervisors and to HR personnel, complaining of allegedly discriminatory and retaliatory actions by Ford's employees. Accordingly, these allegations provide "sufficient factual content" from which this Court, informed by its "judicial experience and common sense, could draw the reasonable inference" that that Banks's supervisors and Ford's HR personnel acted as decisionmakers with respect to the alleged employment actions taken regarding Banks.

Ford's last argument is that Banks "fails to plausibly plead that Ford required him to undergo a psychiatric examination in retaliation for reporting sexual harassment," and that the "far more plausible explanation" is that "his fitness for duty examination resulted from his frequent interactions with medical professionals, to whom he complained of his anxiety." ECF No. 17, PageID.98. But at this stage the Court does not determine which explanation is "more plausible" on a motion to dismiss. On a motion to dismiss under Rule 12(b)(6), the Court accepts a plaintiff's well-pleaded allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Keys*, 684 F.3d at 608. The determination as to which inference is "more plausible" is for the jury, after discovery and the production of evidence.

In sum, the SAC provides "sufficient factual content" from which this Court, informed by its "judicial experience and common sense could draw the reasonable inference" that Ford retaliated against Banks for complaining about his coworkers' and supervisors' conduct. *See Keys*, 684 F.3d at 610 (citations modified). Accordingly, Ford's motion to dismiss Banks's retaliation claims will be **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Defendant's Partial Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 17, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's disability-

based hostile work environment claim in Count II is therefore **DISMISSED**, but his retaliation claims are not dismissed.

This is not a final order and does not close the case.

**IT IS SO ORDERED.**

Dated: September 30, 2026 /s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE